IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------X
:
RICHARD TRUSZ                                    :     3:09 CV 268 (DJS)
:
:
V.                                               :
:
UBS REALTY INVESTORS LLC, AND                    :     DATE: APRIL 27, 2011
UBS, AG                                          :
:
-------------------------------------------------------X

RULING ON PLAINTIFF'S THIRD MOTION TO COMPEL

The factual and procedural history behind this employment action is set forth in considerable detail in this Magistrate Judge's Ruling on Plaintiff's First Motion to Compel, filed December 1, 2009 (Dkts. ##61-62)["December 2009 Ruling"], Ruling on Defendants' Motion to Quash, filed December 10, 2009 (Dkt. #65), Ruling Following Partial In Camera Review, filed December 21, 2009 (Dkt. #72), Ruling on Plaintiff's Motion for Extension of Time, filed January 4, 2010 (Dkt. #77), Ruling Regarding Potential In Camera Review of European Personnel Records, filed January 22, 2010 (Dkt. #85)["January 2010 Ruling"], Ruling on Plaintiff's Second Motion to Compel, filed September 7, 2010 (Dkt. #124)["September 2010 Ruling"], 2010 WL 3583064, Ruling on Plaintiff's Motion for Telephonic Discovery Conference, filed January 13, 2011 (Dkt. #166), Ruling on Defendants' Motion for Reconsideration, filed January 13, 2011 (Dkt. #167), 2011 WL 124504, Ruling on Plaintiff's Motion for Reconsideration, filed January 13, 2011 (Dkt. #168), 2011 WL 121651, Ruling Regarding Plaintiff's Desire to Depose Several Employees Who Reside and Are Employed in Europe, filed February 8, 2011 (Dkt. #179)["February 2011 Ruling"], and Ruling on Defendants' Motion for Rule 35 Examination, filed February 14, 2011 (Dkt. #180), familiarity with which is presumed. (See also Dkts. ##79, 122, 131).

U.S. District Judge Janet Bond Arterton referred this file to this Magistrate Judge for discovery purposes on November 3 and December 4, 2009, and again on June 8, 2010. (Dkts. ##55, 63, 106). The file was transferred to Senior U.S. District Judge Dominic J. Squatrito on September 17, 2010. (Dkt. #126). Under the latest scheduling order, all discovery will be completed by June 30, 2011 and all dispositive motions are to be filed by July 29, 2011. (Dkt. #186).

On March 11, 2011, plaintiff filed the pending Third Motion to Compel, with brief and exhibits in support. (Dkt. #193; see also Dkts. ##194-95).[1] On April 7, 2011, defendants

---

[1]The following **sixty-nine** exhibits are attached: copy of Plaintiff's Fourth Set of Interrogatories and Requests for Production, dated August 19, 2010 (redacted)(Exh. 1); affidavit of plaintiff's counsel, sworn to March 11, 2011 (Exh. 2); copies of e-mails between counsel, dated August 25, October 15, 22 & 26, October 29 through December 13, December 21, 2010, January 3, 6, 11, 17, 18, 19, 20 & 26, February 4, 7, 16, 24 & 28, and March 1, 2, 4, 7, 8 & 10, 2011 (Exhs. 3, 7-8, 10-17, 20, 22-23, 36, 59-68); copy of defendants' Answers and Objections to Plaintiff's Fourth Set of Interrogatories and Requests for Production, dated September 20, 2010 (redacted)(Exh. 4); correspondence between counsel, dated September 4, 2009, January 10 & 15, October 1 & 15, 2010, January 28, and February 2 & 16, 2011 (Exhs. 5-6, 18-19, 21, 25, 37); copy of Defendants' Responses and Objections to Plaintiff's Fifth Set of Requests for Production, dated October 27, 2010 (Exh. 9); copy of Objections and Responses to Plaintiff's First Set of Discovery (Exh. 24); copy of Involuntary Redundancy Terminations (filed under seal)(Exh. 26); copy of e-mail, dated December 16, 2008 (filed under seal)(Exh. 27); copy of Memorandum, dated December 16, 2008 (filed under seal)(Exh. 28); copy of Quarterly Whistleblowing Report Q2 2008, dated July 21, 2008 (filed under seal)(Exh. 29); copy of Whistleblowing Protection for Employees Group Policy (filed under seal)(Exh. 30); excerpts from deposition of Christine Menard, taken on November 23, 2010 (Exh. 31); excerpts from deposition of Thomas O'Shea, taken on October 13, 2010 (Exh. 32); excerpts from deposition of Matthew Lynch, taken on October 28, 2010 (Exh. 33); copy of Defendants' First Amended Responses and Objections to Plaintiff's First Requests for Admission, dated June 17, 2010 (Exh. 34); excerpts from deposition of Michelle Cullen, taken on September 23, 2010 (Exh. 35); copy of e-mails, dated November 11, 2008 (filed under seal)(Exh. 38); copy of Risk Assessment for Q3 2008 (filed under seal)(Exh. 39); copy of Q2 2008 Risk Committee Minutes (filed under seal)(Exh. 40); copy of Notes of 11/13/2008 call (filed under seal)(Exh. 41); copy of Risk Committee Report Q2 2008 (filed under seal)(Exh. 42); copy of Q2 2008 GRE Risk Committee Talking Points (filed under seal)(Exh. 43); copy of Risk Committee Meeting Minutes (filed under seal)(Exh. 44); copy of Risk Committee Report Q4 2008 (filed under seal)(Exh. 45); copy of Risk Committee Report Q1 2008 (filed under seal)(Exh. 46); copy of September 16, 2008 Notes (filed under seal)(Exh. 47); copy of Risk Committee report – Q2 2008 (filed under seal)(Exh. 48); copy of e-mail, dated June 6, 2008 (filed under seal)(Exh. 49); copy of Risk Committee Report Q2 2008 (filed under seal)(Exh. 50); copy of Quarterly Whistleblowing Report (filed under seal)(Exh. 51); copy of internal communication sent by Lynch (filed under seal)(Exh. 52); copy of letter to clients and consultants, dated November 18, 2008 and accompanying e-mail correspondence (filed under seal)(Exh. 53); excerpts from deposition of Carol Kuta, taken on September 24, 2010 (Exh. 54);

filed their brief in opposition. (Dkt. #198; <u>see also</u> Dkts. ##196-97).[2] Six days later, plaintiff filed his reply brief (Dkt. #199),[3] and twelve days thereafter, on April 25, 2011, defendants filed their sur-reply brief. (Dkt. #202[4]; <u>see also</u> Dkts. ##200-01).

For the reasons stated below, plaintiff's Third' Motion to Compel (Dkt. #193) is **<u>granted in part and denied in part</u>**.

## I.  DISCUSSION

In this motion, plaintiff asks the Court to order defendants to comply with twenty-one discovery requests from plaintiff's Fourth and Fifth Requests for Production, served on August 19, 2010 and in September 2010, respectively – Requests No. 145-47, 155-56, 157-59, 160-62, 163-65, 169, 178-79, 181 and 184, and Interrogatories Nos. 24-25. (Dkt. #193, at 1-2; Dkt. #193, Brief at 2-4 & Exhs. 1, 4, 9). Plaintiff further seeks compliance with eight discovery requests from his First Set of Discovery Requests – Interrogatory No. 10, and Requests Nos. 24, 26, 28, 30, 39 and 58-59. (Dkt. #193, at 2; Dkt. #193, Brief at 4-5 &

---

copies of e-mails, dated July 1, 2008 (Exhs. 55-56); excerpts from deposition of Christopher Taylor, taken on November 18, 2010 (Exh. 57); excerpts from deposition of Jeffrey Maguire, taken on October 19, 2010 (Exh. 58); and copy of Quarterly Sign Off (Exh. 69). (<u>See also</u> Dkts. ##194-95).

Although the sealed exhibits appear in Dkt. #195, for ease of reference, they will be referred to as being with Brief found in Dkt. #193.

[2]The following ten exhibits are attached: copy of Defendants' Answers and Objections to Plaintiff's First Set of Interrogatories and Requests for Production, dated June 26, 2009 (Exh. A): additional excerpts from the Lynch deposition (Exh. B); additional excerpts from the O'Shea deposition (Exh. C); excerpts from the deposition of Mario Cueni, taken on March 23, 2011 (Exh. D); copy of correspondence between counsel, dated September 17, 2010 (Exh. E); and copies of e-mail between counsel, dated January 6, 11 & 26, February 24 & 28, & March 1, 6 & 7, 2011 (Exhs. F-J). (<u>See also</u> Dkts. ##196-97).

[3]The following three exhibits are attached: additional excerpts from the Cueni deposition (Supp. Exh. 1); copies of e-mails between counsel, dated April 10 & 13, 2011 (Supp. Exh. 2); and excerpts from the deposition of Mark McKell, taken on September 30, 2010 (Supp. Exh. 3).

[4]Attached is an additional excerpt from the McKell deposition (Supp. Exh. 1).

Exh. 24). Defendants contend that many of these twenty-nine requests already have been the subject of the Court's multiple prior discovery rulings, already have been produced, or at "hopelessly overbroad and unduly burdensome." (Dkt. #198, 1-2, 2-3).

### A. PLAINTIFF'S FOURTH AND FIFTH SETS OF DISCOVERY REQUESTS

#### 1. REQUEST NO. 169 (Documents Concerning Termination of Another Managing Director in UBS Global Asset Management)

In response to Section I.C. of the December 2009 Ruling (at 12-13), defendants identified a Managing Director within the "Americas" division of UBS Global Asset Management, with the initials D.L., who had complained about retaliation and later was terminated based on "involuntary redundancy," similar to the situation here; Request No. 169 seeks "all documents concerning any complaints of retaliation made by [D.L.]." (Dkt. #193, Brief at 6-9 & Exhs. 1, 4, 26-28). Plaintiff contends that these documents are reasonably calculated to lead to the discovery of admissible evidence in that plaintiff and D.L. held the same title of "Senior Manager," both were involuntarily terminated for "involuntary redundancy," and both were terminated within one year of one another; in addition, as a member of the Global Asset Management Risk Committee, D.L. interacted with Thomas O'Shea, Mario Cueni and John Fraser, including attending one meeting at which plaintiff's termination was discussed. (Dkt. #193, Brief at 7-8 & Exhs. 26-28). Defendants have characterized plaintiff's argument as contrary to the deposition testimony in this case, i.e., that Matthew Lynch and O'Shea alone made the decision to eliminate plaintiff's position whereas Cueni alone made the decision to terminate D.L.'s employment. (Dkt. #198, at 3-4 & Exhs. A-D; see also Dkt. #202, at 1-2). As set forth in his reply brief, D.L., who had offices in New York City and/or Stamford, further claimed that UBS AG terminated him because of a memo he had written to Cueni and Fraser, which complaint was included in defendants'

Quarterly Whistleblowing Report. (Dkt. #199, at 1-2 & Exh. 1).

In Section I.B. of the December 1, 2009 Ruling, discovery regarding employee claims of retaliation was limited to defendant UBS Realty only (at 9-12), whereas Section I.C. permitted discovery regarding the termination of Managing Directors to "the 'Americas' division of [defendant UBS AG's] Global Asset Management Group[,]" in that there were only 165 employees in total, in Hartford, Dallas, New York, and San Francisco, in defendant UBS Realty, so that "there [were] in all likelihood only a handful of Managing Directors of UBS Realty with whom to compare plaintiff." (At 12-13). For purposes of discovery, given that there is at best one person comparable to plaintiff, plaintiff is entitled to discovery regarding D.L.'s termination. Such finding obviously has no effect on Senior Judge Squatrito's decision whether these documents, and related testimony, are admissible at trial. Thus, plaintiff's motion is <u>granted</u> with respect to this request.[5]

### 2.  REQUEST NO. 184 (UBS Whistleblowing Reports)

Plaintiff's complaints during 2008 were described in the UBS AG Group Whistleblowing reports, redacted copies of which were provided to plaintiff for the second and third quarters of 2008; Request No. 184 seeks all UBS Whistleblowing Reports since 2007. (Dkt. #193, Brief at 9-13 & Exhs. 1, 4, 11-15, 30-33). Plaintiff argues that these Whistleblowing Reports are reasonably calculated to lead to the discovery of admissible evidence because they will reflect on how defendant UBS AG responds to these complaints, and whether plaintiff received disparate treatment compared to others, the extent to which defendant UBS AG enforces its UBS Group Whistleblowing Policy, and its "corporate culture" insofar as it

---

[5]If defendants prefer to have the Magistrate Judge conduct an <u>in camera</u> review of these documents, in order to protect D.L.'s privacy interests, they may do so **on or before May 16, 2011**; if not, the documents shall be produced to plaintiff's counsel, subject to an appropriate protective order, by that same day.

5

tolerates employees who engage in protected speech. (Dkt. #193, Brief at 10-11 & Exh. 29-31). Plaintiff also points out that Ana Ibis Seebrath, head of human resources for UBS Global Real Estate, Kiku Taura, head of human resources for Global Asset Management, Cueni and Fraser have not been investigated, or reprimanded, for their actions against plaintiff. (Id. at 11-12 & Exhs. 32-33). Defendants have responded that this discovery requested is foreclosed by Section I.A of the December 1, 2009 Ruling (at 9-12), which limited responses of employee complaints to defendant UBS Realty. (Dkt. #198, at 5-6 & Exh. E).

For the reasons stated by defendants, plaintiff's motion is denied with respect to this request.

### 3. INTERROGATORY NO. 24 (Compensation Plaintiff Would Have Received But for Termination)

In Interrogatory No. 24, plaintiff seeks the value of wages and benefits plaintiff would have received if his employment had continued. (Dkt. #193, Brief at 13-14 & Exhs. 1, 4). Defendants represent that they have produced all information concerning plaintiff's past compensation and the compensation of six comparable Managing Directors, as required by the Court, and that plaintiff has retained a damages expert who already has submitted two reports quantifying his or her opinion as to plaintiff's alleged back pay and front pay damages. (Dkt. #198, at 5-6 & Exh. E; see also Dkt. #193, Brief, Exh. 6; Dkt. #199, at 2).

For the reasons stated by defendants, plaintiff's motion is denied with respect to this request.

### 4. INTERROGATORY NO. 25 (UBS AG Reasonable Inquiry Regarding Requests for Admission

In Interrogatory No. 25, plaintiff seeks a description of the reasonable inquiry made by defendant UBS AG in responding to plaintiff's First Set of Requests for Admission. (Dkt. #193, Brief at 14-18 & Exhs. 1, 4, 34). Defendants respond that in this interrogatory,

plaintiff asks defendant UBS AG to identify all actions that it took to admit or deny more than two hundred of plaintiff's Requests for Admission, a request which defendants argue violates Rule 33, and which seeks irrelevant information. (Dkt. #198, at 7-9 & Exh. D. See also Dkt. #199, at 2-4; Dkt. #202, at 2-3).

Defendants are correct that this single interrogatory is actually more than two hundred separate interrogatories. See, e.g., Wildearth Guardians v. Public Serv. Co. of Colorado, No. 09-cv-01862-ZLW-MEH, 2010 WL 5464313, at *2-4 (D. Colo. Dec. 29, 2010)(discussing interrogatory subparts as discrete and separate questions); Estate of Fahner v. Wayne Cnty., Michigan, No. 08-CV-14344, 2009 WL 4644788, at *2 (E.D. Mich. Dec. 3, 2009)(striking extraneous subparts that converted 27 requests for admissions into 270 interrogatories), aff'd, 2010 WL 374174 (E.D. Mich. Jan 25, 2010); Safeco of America v. Rawstron, 181 F.R.D. 441, 442-46 (C.D. Cal. 1998). In his reply brief, plaintiff acknowledges that he "can certainly file a motion to compel with respect to the sufficiency of UBS AG's 'reasonable inquiry' under Rule 36," but adds that "there is nothing in the Rules that prohibits [p]laintiff from asking [d]efendants to describe the 'reasonable inquiry' undertaken before filing such a motion." (Dkt. #199, at 3). However, given the extensive discovery in this case, and the almost unprecedented motion practice for a single plaintiff case, the Magistrate Judge encourages the counsel to avoid further "satellite litigation with little benefit." Radian Asset Assurance, Inc. v. College of Christian Bros. of New Mexico, No. CIV 09-0885 JB/DJS, 2010 WL 5173571, at *20 (D.N.M. Nov. 11, 2010).

For the reasons stated by defendants, plaintiff's motion is denied with respect to this request.

7

5. REQUESTS NOS. 163-65 (Communications Among European Executives Regarding UBS Realty)

In Requests Nos. 163-65, as modified by plaintiff, plaintiff seeks all communications between Fraser, Cueni, and Paul Marcuse, concerning defendant UBS Realty, for the time period of October 1, 2007 through December 31, 2008; plaintiff contends that these communications are likely to lead to the discovery of admissible evidence regarding the interrelation of operations, centralized control of labor relations, common management, and common ownership of financial control. (Dkt. #193, Brief at 18-20, 21-23 & Exhs. 1, 3-5, 21, 24).

Defendants argue that this Court twice has ruled that neither Fraser nor Marcuse possessed unique personal knowledge about the relevant facts pertaining to plaintiff's termination (January 2010 Ruling & February 2011 Ruling), that defendants already have produced hundreds of e-mails of Cueni, Fraser and Marcuse, as well as other documents of Cueni, that Cueni testified at his recent deposition on March 23, 2011 that defendant UBS Realty alone made the decision to terminate plaintiff's employment, of which Cueni was informed after-the-fact, that the requests violate applicable European Data Protection laws, and that Cueni's e-mails may be protected by the attorney-client privilege and/or attorney work product doctrine. (Dkt. #198, at 11-16 & Exh. D). In his reply brief, plaintiff points to the fact that he filed an Objection to the February 2011 Ruling (Dkt. #185; see also Dkt. #191), that these communications are relevant to whether defendants are an integrated employer, and that defendants should be compelled to provide a log of communications that defendants claimed are protected by the European Data Protection laws. (Dkt. #199, at 4-6). In their sur-reply brief, defendants represent that they have "gathered and reviewed every single [e-mail] between [Marcuse, Lynch and Seebrath] and key UBS Realty personnel and

8

produced all relevant, non-privileged e-mails." (Dkt. #202, at 3).

For the reasons stated by defendants, plaintiff's motion is <u>denied</u> with respect to these requests.

6. REQUESTS NOS. 145-47, 157-59, 160-62 & 181 (<u>Communications Between European Executives and Senior Management of UBS Realty</u>)

In these discovery requests, as modified by plaintiff, plaintiff seeks all communications between Lynch, O'Shea, or Seebrath, and Fraser, Cueni and Marcuse during the time period of October 1, 2007 and December 31, 2008 (Requests Nos. 145-47, 157-59, and 160-62), as well as communications between Michelle Cullen and Cueni during that time period, as they would provide information regarding the supervision of defendant UBS Realty and its executives by Marcuse, Cueni and Fraser. (Dkt. #193, Brief at 23-25 & Exhs. 1, 4, 12, 16-17, 21).

Defendants represent that "[i]n the spirit of compromise," defendants collected all requested e-mails that appeared on defendants' U.S.-based servers between these individuals, reviewed them one-by-one regarding relevancy, privilege and confidentiality, and produced all relevant, non-privileged e-mails on February 28-March 1, 2011, consisting of 163 additional pages; in addition, defendants have disclosed how many documents were withheld on the basis of privilege. (Dkt. #198, at 10-11 & Exhs. G-H). In his reply brief, plaintiff asserts that defendant have only "partially responded[]" (Dkt. #199, at 4 & Exh. 2), with which defendants disagree. (Dkt. #202, at 3).

For the reasons stated by defendants, plaintiff's motion is <u>denied</u> with respect to these requests.

7.  REQUESTS NOS. 178-79 (<u>UBS Policies that Apply to UBS Realty</u>)

Plaintiff seek copies of policies of defendant UBS AG and of UBS Global Asset

management that apply to defendant UBS Realty, as such policies would "obviously represent important evidence of how the operations and management of defendants UBS Realty and UBS AG are integrated." (Dkt. #193, Brief at 25-26 & Exhs. 1, 4)(citation omitted). In their brief in opposition, defendants "do not dispute that UBS AG and/or UBS AG's Global Asset Management division maintain hundreds, if not thousands, of policies that apply to its various business units, affiliates and/or subsidiaries[,]" of which defendants already have produced at least ten of them, and it is "impossible" to generate a list of all policies of defendant UBS AG or Global Asset Management that apply to defendant UBS Realty. (Dkt. #198, at 16-18; see also Dkt. #193, Brief, Exh. 15). According to plaintiff, Mark McKell, defendant UBS Realty's Risk Officer, testified at his deposition that UBS maintains a computer system entitled POLO, for policies online, that would allow him to search and gather information about applicable policies. (Dkt. #199, at 6 & Exh. 3). Defendants explained that McKell was asked about outsourcing and offshoring policies, which defendants produced for plaintiff, and that he did not testify that all UBS policies are available on line. (Dkt. #202, at 4 & Exh. 1).

For the reasons stated by defendants, plaintiff's motion is denied with respect to these requests.

### 8. REQUESTS NOS. 155-56 (Documents Concerning UBS Group Executive Board and Group Management Board)

Plaintiffs also seek documents, minutes, and agendas concerning meetings of the UBS Group Executive Board ["GEB"] and UBS Group Management Board ["GMB"], as these documents are relevant to whether defendants are an integrated employer. (Dkt. #193, Brief at 26 & Exhs. 1, 4, 36). According to defendants, the GMB documents do not exist since the group does not meet or produce minutes, the GEB minutes are irrelevant, "extremely

confidential[,]" and protected from disclosure by applicable Swiss law, and defendants already have produced relevant documents from other committees, such as the Global Asset Management Risk Committee, the Global Real Estate Risk Committee, and the Global Real Estate Management Committee. (Dkt. #198, at 18-20 & Exhs. D, I; see also Dkt. #193, Brief, Exh. 6).

For the reasons stated by defendants, plaintiff's motion is denied with respect to these requests.

### B. PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS

#### 1. REQUESTS NOS. 24, 26, 28 & 30 (ESI from Specific People, Using Specific Search Terms, during a Specific Time Period; Complaints Made by Plaintiff to Defendants' Employees, Termination of Plaintiff's Employment, and Defendants' Request for Plaintiff to Leave Defendant UBS on June 30, 2008)

Plaintiff seeks to renew his previous Motions to Compel regarding Requests No. 24, 26, 28 and 30 regarding communications between Fraser, Cueni and Marcuse regarding the allegations in the lawsuit (Request No. 24), complaints made by plaintiff to defendants' employees (Request No. 26), the termination of plaintiff's employment (Request No. 28), and defendants' request that plaintiff leave defendant UBS on June 30, 2008 (Request No. 30). (Dkt. #193, Brief at 20-21, 27-37 & Exhs. 17, 19-21, 24). Plaintiff has identified eight "groups" of searches: (1) for Lynch, O'Shea, Christine Menard (Human Resources Manager), and Cullen (Chief Compliance Officer who investigated plaintiff's claims), search of the terms "employee matter," "employee issue," "employee claim," "employment matter," "employment issue," "employment claim," and "employment dispute," as well as "whistleblower," "whistleblowing," "fiduciary duty", "fiduciary obligation," "complaint," "harass!," "discriminat!," "retaliat!," "investigat!," "valuation," "discrepanc!," "value/valuation," "independent," "apprais!," "redundacy," "terminat!," "headcount reduction," "position" within

11

three words of "eliminated," "leave of absence" and "LOA," in that such terms were used regularly in their internal communication regarding plaintiff, without using his name; (2) for Carol Kuta (Head of Accounting), search of the same terms as in Group 1, plus for communications between Kuta and Cullen, Tom Gould and Chris Taylor the additional terms of "expense stop" and "recovery/recoveries," for Kuta's communications with Lynch, Kevin Crean, Taylor and Gould, the terms "CambridgeSide" and "Ruggles" for the limited time period of June 1 to August 15, 2008, and the terms "Folsom," "IPERS," and "Reinhardt" with respect to the Folsom Corporate Center property; (3) for Crean (Managing Director, Portfolio Manager for TPF Fund), the same search teams as in Groups 1 and 2; (4) for Jeff Maguire (Managing Director, Portfolio Manager for ARMB/IPERS), the same search teams as in Groups 1 and 2, plus the additional term of "Sikes" for the time period of November-December 2008; (5) for Tom Anathan (Managing Director, Head of Marketing), the same search terms as in Groups 1, 2 and 4, plus the additional term of "Dohrmann" for the time period of October 1 to December 31, 2008; (6) for Gould (Member of Valuation Unit), the search terms "tax recover!" and "Folsom," or "Folsom" and "expense stops," as well as "Reinhart" for the time period of November-December 2008, and "CambridgeSide" and "Ruggles," as limited by plaintiff's letter of February 2, 2011 (Exh. 19); (7) for Taylor (Member of Valuation Unit), the search terms "expense stops" and ""Crown Colony," "expense stops" and "recover!," as well as "Presidential Way" for the time period April-May 2008, and "CambridgeSide" and "Ruggles," as limited by plaintiff's letter of February 2, 2011 (Exh. 19); and (8) for Mark McKell (Risk Officer), the search terms of "employee/employment claim," "employee/employment issue," "employee/employment matter," and "employee/employment dispute." (Dkt. #193, Brief at 29-36 & Exhs. 19, 31, 33, 35, 38-58). Plaintiff also seeks production of documents from Seebrath, Taura, and Jordan Schiffman (UBS counsel) relating

to plaintiff and the allegations in his lawsuit.  (Dkt. #193, Brief at 36-37 & Exhs. 12-13, 59-66).

In their brief in opposition, defendants argue that plaintiff's request for "a series of wildy overbroad search terms" from seventeen employees' e-mail accounts exceeds the scope of the original requests, defendants already have produced e-mails and other documents with the three terms "RT," "Rich" or "Trusz," from their servers in Hartford, Dallas and San Francisco, as well as CD's of e-mails from numerous employees of UBS Realty, consisting of millions of pages (which plaintiff is free to search on his own), and the proposed generic terms like "complaint" or "employee claim" will capture e-mails regarding unrelated lawsuits and claims, which will result in plaintiff complaining of another "document dump" as before. (Dkt. #198, at 21-25 & note 15; see also Dkt. #193, Brief, Exhs. 18, 21, 61).  Defendants have run twenty-three of plaintiff's proposed thirty search terms across just three of the proposed seventeen employees' e-mail accounts, generating more than 100,000 e-mails, so that a search of the e-mails of all seventeen employees is likely to yield "at least half a million irrelevant or duplicative [e-mails]"; a few of the generic terms resulted "in relatively few" e-mails, which defendants have agreed to review and produce relevant, non-privileged e-mails. (Dkt. #198, at 25; see also Dkt. #193, Brief, Exhs. 23, 25, 65-66).  Defendants further argue that running plaintiff's proposed search terms will pose an undue cost on defendants, which expense should be borne by plaintiff, and the appropriate recourse at this juncture is the appointment of a Special Master, as previously indicated in the September 2010 Ruling (at 10, 12, 15, 17). (Dkt. #198, at 25-28; see also Dkt. #193, Brief, Exhs. 21, 65-66; Dkt. #199, at 6-10; Dkt. #202, at 4-5).

In an e-mail, dated March 7, 2011, defense counsel included a report with the breakdown of twenty-three search terms in the e-mail boxes of Seebrath, Taura, and

13

Schiffman, and agreeing to review some of them for relevancy and privilege; in an e-mail the next day, plaintiff requested a search of all terms within the e-mail boxes of Sailer, Lynch, O'Shea, Cueni, Fraser, Marcuse, and Cullen also. (Dkt. #198, at 25; see also Dkt. #193, Brief, Exhs. 65-66).

Based upon the reports that appear in Dkt. #193, Brief, Exhs. 65-66, defendants shall review, at their own expense, and produce all relevant, non-privileged documents (consistent with prior rulings of this Court) as follows, if they have not already done so:

(1) for Seebrath, Taura, Schiffman, Lynch, O'Shea, Menard, and Cullen, the terms "employee matter," "employee issue," "employee claim," "employment matter," "employment issue," "employment claim," and "employment dispute," "whistleblower," "headcount reduction," "position" within three words of "eliminat!," "leave of absence" and "LOA," in that such terms were used regularly in their internal communication regarding plaintiff, without using his name;

(2) for Kuta, search of the same terms as in Group 1, and for Kuta's communications with Lynch, Crean, Taylor and Gould, the terms "CambridgeSide," "Ruggles," "Folsom," "IPERS," and "Reinhardt" for the limited time period of June 1 to August 15, 2008;

(3) for Crean, the same search teams as in Groups 1 and 2;

(4) for Maguire, the same search teams as in Groups 1 and 2, plus the additional term of "Sikes" for the time period of November-December 2008;

(5) for Anathan, the same search terms as in Groups 1, 2 and 4, plus the additional term of "Dohrmann" for the time period of October 1 to December 31, 2008;

(6) for Gould, the search terms "Folsom" and "Reinhart" for the time period of November-December 2008, and "CambridgeSide" and "Ruggles," as limited by plaintiff's letter of February 2, 2011 (Exh. 19);

14

(7) for Taylor, the search terms "Crown Colony" and "Presidential Way" for the time period April-May 2008, and "CambridgeSide" and "Ruggles," as limited by plaintiff's letter of February 2, 2011 (Exh. 19); and

(8) and for McKell, the search terms of "employee claim," "employee issue," and "employee matter."

Defendants shall comply **on or before May 20, 2011**. Any other searches requested by plaintiff shall be made at plaintiff's expense and under the supervision of a Special Master.

### 2. REQUEST NO. 39 (Documents regarding properties about which valuation errors were reported prior to plaintiff's termination)

While the parties have been successful in reducing the scope of agreement regarding Request No. 39, the following documents remain at dispute: (1) the workfile maintained by the member of the valuation with responsibility for Crown Colony, Folsom Corporate Center, Columbia Center, and Happy Valley Towne Center for the appropriate quarters; (2) the Quarterly Sign-off Certifications for these four properties for the appropriate quarters; and (3) e-mails between the member of the valuation unit and the third-party appraiser for Folsom Corporate Center, Crown Colony and Columbia Center, as follows: (a) for Crown Colony, all e-mails between Chris Taylor of UBS and Rob Skinner from Cushman & Wakefield between May 1, 2007 and December 1, 2007; (b) for Folsom Corporate Center, all e-mails between Gould of UBS and Judson Kline of Cushman & Wakefield between May 1, 2007 and December 31, 2007; and (c) for Columbia Center, all e-mails between Ron Osborne of UBS and Carolyn Kakareka and Gerry Harvey from CB Richard Ellis between May 1, 2007 and January 15, 2008. (Dkt. #193, Brief at 37-39 & Exhs. 19, 21, 23, 24, 37, 67-69).

In their brief in opposition, defendants argue that they have provided plaintiff with

15

three CD's and hard copies, comprising more than 50,000 pages on valuation errors, as well as quarterly certification workflow reports, and that plaintiff has "broadened" his requests, in that he wants all information regarding these properties, without limit to valuation errors. (Dkt. #198, at 28-29; see also Dkt. #193, Brief, Exhs. 19). In the spirit of "compromise," defendants have produced all requested independent appraisal reports, internal debt valuation documents, and checklists for the requested properties. (Dkt. #198, at 28-29; see also Dkt. #193, Brief, Exhs. 21, 23, 67). Defendants argue that any further issues on this request ought to be decided by a Special Master. (Dkt. #198, at 29).

Contrary to plaintiff's position (see Dkt. #199, at 10), Request No. 39 is limited to "documents concerning any valuation error reported by [p]laintiff or any other member of the valuation unit during his employment with [d]efendant." (Dkt. #193, Brief, Exh. 24). Therefore, defendants need only produce documents, if any, in plaintiff's designated categories, that pertain to any valuation error reported by plaintiff or any other member of the valuation unit during his employment with UBS. To the extent that there are any such documents that have not been produced, defendants shall do so **on or before May 16, 2011**.

### 3.  INTERROGATORY NO. 10 & REQUESTS NOS. 58-59 (Side Letters)

In these discovery requests, plaintiff seeks the two side letters that UBS Realty entered into with Chevron and Boeing, about which plaintiff raised concerns during his employment, and not just the excerpts that appear in their own compliance investigation. (Dkt. #193, Brief at 39-40 & Exhs. 12-15, 24). Defendants argue that the side letters are not relevant to plaintiff's retaliation claim, that defendants already have provided a sample letter agreement and/or sample consent agreement as ordered in Section I.E of the December 2009 Ruling (at 14-16), and that plaintiff already has been given the language of the "'most

favored nation' clause" in the specific side letters signed by Boeing and Chevron. (Dkt. #198, at 29-31 & Exhs. A, J. See also Dkt. #199, at 10).

Defendants shall produce these two letters to plaintiff, in their entirety, if they contain any terms or items that differ from, or are in addition to, the sample letters already received by plaintiff or the "'most favored nation' clause" already provided to plaintiff, **on or before May 16, 2011**.

## II. CONCLUSION

Accordingly, for the reasons stated above, plaintiff's Third Motion to Compel (Dkt. #193 is granted with respect to Request No. 169 (to the extent set forth in Section I.A.1 supra), with respect to Requests Nos. 24, 26, 28 & 30 (to the extent set forth in Section I.B.1 supra), with respect to Request No. 39 (to the extent set forth in Section I.B.2 supra), and with respect to Interrogatory No. 10 and Requests Nos. 58-59 (to the extent set forth in Section I.B.3 supra), and is denied with respect to Interrogatories Nos. 24-25, and Requests No. 145-47, 155-56, 157-59, 160-62, 163-65, 178-79, 181, 184.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; Fed. R. Civ. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit);** Caidor v. Onondaga County, 517 F.3d 601, 603-05 (2d

Cir. 20008)**(failure to file timely objection to Magistrate Judge's discovery ruling will preclude further appeal to Second Circuit)**.

Dated at New Haven, Connecticut, this 27th day of April, 2011.


                                                 /s/ Joan G. Margolis, USMJ
                                                 Joan Glazer Margolis
                                                 United States Magistrate Judge